UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MILLENIUM DRILLING CO., INC.,<br><br>                     Plaintiff,<br>v.<br>BEVERLY HOUSE-MEYERS RECOVABLE TRUST, et al.,<br><br>                     Defendants. | Case No. 2:12-cv-00462-MMD-CWH<br><br>ORDER |

**I.    SUMMARY**

Before the Court is Defendant Schain Leifer Guralnick's ("SLG") First Amended Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction (2:13-cv-78, dkt. no. 120) and Third-Party Defendants Montcalm Co., LLC ("Montcalm") and Matthew Barnes' ("Barnes") Amended Motion to Dismiss the Third-Party Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (dkt. no. 81). For the reasons set forth below, both SLG's and Barnes and Montcalm's Motion to Dismiss are granted.

**II.    BACKGROUND**

    **A.    Facts**

Plaintiff Millennium Drilling Co, Inc. ("Millennium") seeks payment related to Defendants' investments in certain oil and gas companies. Millennium alleges that Defendants Beverly House-Meyers Revocable Trust, Grace Mae Properties, LLC, Molly Hamrick, Robert Hamrick, Hamrick Trust, and Beverly House-Meyers acquired working interests in oil and gas investments and became general partners in the Falcon, Colt, and Lion drilling partnerships (collectively, the "drilling partnerships"). These partnerships

were engaged in oil and gas exploration. Defendants allegedly invested in the drilling partnerships with cash contributions as well as subscription note, security, and pledge agreements (the "notes").[1] The notes included language allowing the notes to be assigned by the drilling partnerships to Millennium.

Through their managing partner and Third-Party Defendant Montcalm, the drilling partnerships acquired interests in portions of portfolios of oil and gas leases and lands assembled by Third-Party Defendant Patriot Exploration. The drilling partnerships then contracted with Millennium for the drilling of the related wells. For example, Falcon Drilling Partnership executed an agreement with Millennium in which Falcon pledged all of its partners' subscription notes to Millennium as security for Falcon's future payment obligations. Millennium later claimed that Falcon had defaulted according to the terms of the agreement and that Defendants owed the capital contributions that they had pledged as security.

**B.     Procedural History**

On March 19, 2012, Millennium filed a complaint against Defendants in the District of Nevada. The complaint alleged breach of contract, unjust enrichment, and breach of the duty of good faith and fair dealing. Defendants raised as affirmative defenses that (1) Millennium had committed fraud with respect to the contract; and (2) the contract was unconscionable and illegal. With leave of the Court, Millennium filed its First Amended Complaint ("FAC") on November 26, 2012.

On June 6, 2012, Molly Hamrick, Beverly House-Myers, and R&M Hamrick Family Trust filed a complaint against Patriot Exploration, Montcalm, Matthew Barnes, and SLG, among others, but not including Millennium, in Texas state court based on the same underlying transactions giving rise to Millennium's lawsuit. Patriot Exploration removed

---

[1] Third Party Defendants Robert and Elizabeth Holt acted as Defendants' financial advisors from 2003 to 2008. The Holts allegedly introduced Defendants to Feldman in 2004 and informed Defendants about the investment opportunity in the drilling partnerships. Third party claims against the Holts were recently dismissed pursuant to the parties' stipulation. (Dkt. no. 170.)

the case to the Southern District of Texas. Hamrick, Beverly House-Myers, and R&M Hamrick Family Trust allege (1) breach of fiduciary duty; (2) fraud/fraud in the inducement; (3) fraudulent nondisclosure; (4) negligent misrepresentation; (5) breach of contract; (6) imposition of constructive trust; and (7) conspiracy.

On January 15, 2013, Hon. Melinda Harmon, United States District Judge for the Southern District of Texas, granted Patriot Exploration's Motion to Transfer Venue, determining that the Nevada and Texas actions involved substantially similar issues. (Dkt. no. 67 at 6.) The case was designated as 2:13-cv-78.

On May 6, 2013, this Court consolidated the two related cases into the first-filed Nevada action. (Dkt. no. 79). The plaintiffs in 2:13-cv-78 were designated as Third Party Plaintiffs in the instant case and the defendants in 2:13-cv-78 were designated as Third Party Defendants. (*Id.*)

On May 16, 2013, the Court denied Defendants' first motion to dismiss, asking that this action be dismissed in favor of the second-filed Texas action, as moot given the Court's decision to consolidate the cases. (Dkt. no. 80.)

The Court now addresses Third-Party Defendants Montcalm and Barnes' Amended Motion to Dismiss the Third Party Complaint for Lack of Personal Jurisdiction (dkt. no. 81), filed on May 23, 2013, and Third-Party Defendant SLG's First Amended Motion to Dismiss for Lack of Personal Jurisdiction (2:13-cv-78, dkt. no. 120), filed on April 9, 2013. The Court granted several requests for extensions of time regarding the briefing of the instant motions in order to allow the parties an opportunity to conduct jurisdictional discovery. Oral argument occurred on February 5, 2014. (*See* dkt. no. 168.)

The day before oral argument, Third-Party Plaintiffs filed a proposed first amended complaint.[2] (Dkt. no. 166.) Third-Party Plaintiffs were not able to amend as a

---

[2] The Court notes that while Third-Party Defendants argued in their Motions, both filed in spring 2013, that Third-Party Plaintiffs' Complaint was not sufficient to establish jurisdiction, Third-Party Plaintiffs waited until the day before oral argument to file a proposed amended complaint.

matter of course, pursuant to Federal Rule of Civil Procedure 15(a)(1), and were therefore required to either obtain the opposing party's written consent prior to amending or seek leave of the Court, neither of which they sought. *See* Fed. R. Civ. P. 15(a)(2). While the proposed amended complaint is not properly before this Court, the parties referenced it in oral argument and the Court incorporates a discussion of it in order to note that it does not cure the Complaint's jurisdictional deficiencies.[3]

## III. LEGAL STANDARD

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansin*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, defendants' motions are based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (*quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

## IV. DISCUSSION

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Society Expeditions*, 39 F.3d 1398, 1404

---

[3] The Court further notes that Third-Party Plaintiffs moved for leave to file a second amended complaint over a week after oral argument on February 14, 2014. (Dkt. no. 171.) As the Motion is not ripe, the Court does not consider it in this Order.

(9th Cir. 1994). Since "Nevada's long-arm statute, NRS § 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *See Baker v. Eighth Judicial District Court ex rel. Cnty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404–05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction. The Third-Party Plaintiffs have only claimed to have specific jurisdiction over Third-Party Defendants SLG and Montcalm and Barnes.

Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." *CollegeSource, Inc.*, 653 F.3d at 1075. Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802)). The party asserting jurisdiction bears the burden of satisfying the first two prongs. *CollegeSource, Inc.*, 653 F.3d at 1076 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *CollegeSource, Inc.*, 653 F.3d at 1076 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).
///

### A. SLG

SLG is a certified public accounting firm in New York City. (*See* dkt. no. 122 at 3.) SLG argues that its work in this matter is limited to the preparation of tax returns and financial statements for Defendant Patriot. (2:13-cv-78, dkt. no. 120 at 6–7.) SLG states that its only communication regarding the preparation of these documents was with Jonathan Feldman, the owner of Patriot, his assistant Marion John, and Matthew Barnes, all of whom were located in Massachusetts or Connecticut. (*See id.* at 7.) As a result, "no member of SLG ever had communications of any kind with anyone in Nevada." (*Id.* at 6.)

Third-Party Plaintiffs allege that SLG sent K-1s pertaining to the oil and gas partnerships at issue in this case to Third-Party Plaintiff R&M Hamrick Family Trust in Nevada from 2004 to 2012. (Dkt. no. 122 at 3.) Third-Party Plaintiffs further state that "SLG also sent K-1s, at various times and in various years to at least 7 other partners in the Colt, Lion or Falcon drilling partnerships that reside or did reside in Nevada, most of whom are parties to this lawsuit." (*Id.* at 4.) While not raised in Third-Party Plaintiffs' Complaint, or proposed amended complaint (*see* hr'g tr. at 20–22), in oral argument Third-Party Plaintiffs argued that the K-1s were inaccurate.[4] Specifically, they claimed that SLG misrepresented what the intangible drilling costs were that could be deducted. (*See id.* at 22.) In addition to its role in sending the K-1's, Third-Party Plaintiffs allege that SLG "prepared the audited return on investment that was included in the promotional materials that were given to Plaintiffs." (*Id.* at 8.)

SLG concedes that K-1s were sent to the R&M Hamrick Family Trust, but explains that this mailing does not constitute purposeful direction as it was simply done

---

[4] Prior to oral argument, the only suggestion that the K-1s were inaccurate is made by Third-Party Plaintiffs in a single sentence in their Response to SLG's Motion to Dismiss. (*See* dkt. no. 122 at 3 ("In the course of its conduct, moreover, SLG repeatedly mailed misleading financial information regarding the fraudulent transactions to Third-Party Plaintiff R&M Hamrick Family Trust in Nevada, namely K-1s pertaining to the oil and gas partnerships at issue in this proceeding.").)

as a courtesy to its clients. (*See* dkt. no. 135 at 5.) SLG states that the partnerships collectively have hundreds of investors in virtually every state and that the maximum number of investors in Nevada at any one time was eight. (*See id.* at 4.) None of the Nevada investors were ever clients of SLG in their role as investors. (*See id.* at 5.) Indeed, even if the mailing did constitute purposeful direction, there is no dispute that the K-1s were only sent to those who had already invested. As a result, no claim in the case can arise under the mailing of K-1s. Regarding the audited returns on investment ("audited returns"), SLG argues that they were produced for internal purposes only and that Third-Party Plaintiffs have failed to allege any facts connecting the creation of the audited returns on investment to either activity in Nevada or a claim in the case. (*See id.* at 4; *see also* hr'g tr. at 35–37.)

### 1. Purposeful Direction

"The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction." *CollegeSource, Inc.*, 653 F.3d at 1076. Cases involving tortious conduct are analyzed under the rubric of purposeful direction. *Id.* (*citing Schwarzenegger*, 374 F.3d at 802). In tort cases, the Ninth Circuit asks whether a defendant "purposefully directs" her activities at the forum state and applying an "effects" test that looks to where the defendant's actions were felt, rather than on where the actions occurred. *Yahoo! Inc. v. La Ligue Contre Le Racism Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (*quoting Schwarzenegger*, 374 F.3d at 803.). In contract cases, a court inquires into whether the defendant "purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (*quoting Shwarzenegger*, 374 F.3d at 802). The "effects test" requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (*quoting id.* at 803).

///

### a. K-1s

SLG's only direct contact with Nevada is limited to its courtesy mailing of K-1s to partnership investors in Nevada. Third-Party Plaintiffs have not, however, demonstrated that this act caused harm that the defendant knew would be likely suffered in the forum state.[5] While Third-Third-Party Plaintiffs raised allegations in oral argument concerning the accuracy of the K-1s, neither the Complaint nor the improperly filed proposed first amended complaint contains allegations that the K-1s contained false information or that SLG knew or should have known that they included false information. (*See* hr'g tr. at 20-22.) Third-Party Plaintiffs have not, therefore, made any allegations that connect the alleged fraudulent scheme at issue in the lawsuit with SLG's conduct aimed at Nevada. As a result, the Court cannot find that SLG's sending of K-1s to investors in Nevada constitutes purposeful direction.

### b. Independent Accountant's Report

Third-Party Plaintiffs also assert that SLG prepared the audited returns and that SLG knew or should have known that Feldman would use these audited returns in the promotional materials used to induce Plaintiffs to invest in the partnerships. (*See* dkt. no. 122 at 8.) Third-Party Plaintiffs have failed to demonstrate that the preparation of these forms establish purposeful direction.

First, Third-Party Plaintiffs fail to point to any reason why SLG knew or should have known that the audited returns would be used to induce investment in the partnerships. SLG argues, and the audited returns themselves indicate, that the audited

///

///

---

[5] The Court declines to consider whether the sending of K-1s constitutes an act that is expressly aimed at Nevada as Third-Party Plaintiffs have failed to establish that SLG knew or was likely to know that harm would be suffered in Nevada. The Court notes, however, that the parties agree that the maximum number of Nevada investors in any one year was eight, and more likely six, while the approximately 310 other investors were distributed across the country. (*See* hr'g tr. at 11–12, 47.)

returns are for internal use only.[6] Second, Third-Party Plaintiffs allege no facts suggesting that even if SLG knew that the audited returns would be used to induce investment, that they knew such solicitation would be likely to occur in Nevada.

Finally, even if Third-Party Plaintiffs can demonstrate that SLG knew the audited returns would be used to solicit investment in Nevada, they would need to address the timing of the Third-Party Plaintiffs' investment in relation to the date the audited returns were prepared. Howard Schain indicated in his deposition that while audited returns were prepared for a number of years, the first one was prepared in 2006. (*See* dkt. no. 122-1 at 22.) The audited return that Third-Party Plaintiffs attached to their proposed first amended complaint is dated April 24, 2006. (*See* dkt. no. 166, Ex. A.) During oral argument, SLG explained that there are three partnerships that Third-Party Plaintiffs invested in: (1) Colt, which they invested in during 2004; (2) Falcon, which they invested in during 2005; and (3) Lyon, which only Hamrick Trust invested in during 2006. (*See* hr'g tr. at 35.) It appears, therefore, that the timing would preclude the audited return from being used to induce investment in any of the partnerships except for potentially Hamrick Trust's investment in Lyon. Regarding the investment in Lyon, Third-Party Plaintiffs allege no facts suggesting that Hamrick Trust was in fact given a copy of the return.

The Court therefore finds that Third-Party Plaintiffs have not established that SLG purposely directed its activities to Nevada.

### 2. Arising out of Forum-Related Activities

Given the discrepancies between the arguments Third-Party Plaintiffs raised in their briefs and those argued at the hearing regarding the K-1s, the Court notes that even if it were to find that the purposeful direction prong of the specific jurisdiction test

---

[6]At the hearing, Third-Party Plaintiffs argued for the first time that one of the opinions listed on the audited returns appears to be directed at investors, suggesting that SLG knew or intended for this document to be distributed to investors. (*See* hr'g tr. at 27-28.) Third-Party Plaintiffs include no such allegation in the Complaint or in their Response to SLG's Motion to Dismiss.

has been met, the Court cannot find that the claims at issue in the case arise out of the mailings of the K-1s or the alleged misleading information in the K-1s. Third-Party Plaintiffs argue that the act of sending K-1s to Nevada investors supports jurisdiction in this case because "SLG conspired with the Defendants to dupe the Nevada-resident Plaintiffs into making and remaining invested in the drilling and tax investments at issue, knowing full well that the Plaintiffs would rely upon SLG's misrepresentations and omissions in entering into and remaining in the fraudulent investments, and knowing full well that the Plaintiffs were Nevada residents and would suffer damages in Nevada." (Dkt. no. 122 at 7.) SLG states, however, that it mailed the K-1s to Nevada investors after they had already invested in the partnership and, therefore, could not have served as an inducement. SLG also claims that it had no awareness of the purported scheme and what effects it would have in Nevada. (*See* dkt. no. 135 at 8.)

The Court agrees with SLG that the K-1s could not have been used to induce investment given that they were only sent to those who had already invested. While Third-Party Plaintiffs argued during the hearing that remaining in the investment is a claim in the case, the Court finds that remaining in the investment is not itself a claim, but simply relates to damages. Sending the K-1s and providing allegedly misleading information in the K-1s, therefore, are not acts that a claim in the case can arise out of.

The Court therefore need not reach the reasonableness prong of the specific jurisdiction test and finds that Third-Party Plaintiffs lack jurisdiction in Nevada over SLG.

B. **Barnes & Montcalm**

Matthew Barnes is the Managing member of Third-Party Defendant Montcalm. (*See* dkt. no. 131 at 3.) Montcalm, located in Massachusetts, is the Managing General Partner of a series of oil and gas partnerships, including Colt, Lion, and Falcon Drilling Partnerships. (*See id.*) Third-Party Plaintiffs allege that: (1) they completed documents in Nevada in order to become part of the Colt, Lion, and Falcon Drilling Partnerships; (2) they sent those documents from Nevada to Barnes and Montcalm; and (3) Barnes and Montcalm approved their admission into the Partnerships and countersigned the

documents. (*See id.* at 6.) Third-Party Plaintiffs further allege that Barnes and Montcalm repeatedly reviewed, approved, and authorized misleading financial information regarding the fraudulent transactions, namely K-1s, and authorized SLG to mail the K-1s to investors in Nevada. (*See id.*)

### 1. Purposeful Direction

Third-Party Plaintiffs do not appear to allege any facts showing that Barnes and Montcalm purposefully availed themselves of the privilege of conducting activities in Nevada. Instead, they argue that there was purposeful direction because Barnes and Montcalm engaged in an intentional tort specifically directed to the Third-Party Plaintiffs in Nevada. (*See* dkt. no. 131 at 14.) Specifically, they argue that "Barnes and Montcalm knew that the Third-Party Plaintiffs were based in Nevada, and that the ill effects of the fraudulent tax scheme would be felt in Nevada." (*Id.* at 16.) As a result, Third-Party Plaintiffs allege that Barnes and Montcalm committed an intentional tort that was knowingly directed into the forum state. (*See id.* at 17.) Barnes and Montcalm argue that even taking all of Third-Party Plaintiffs' allegations as true, they have not alleged any facts that establish purposeful direction as applied by the Ninth Circuit.

The Court agrees with Barnes and Montcalm that Third-Party Plaintiffs have failed to allege any facts showing that they purposefully directed their activities toward Nevada or purposefully availed themselves of conducting activities in Nevada. Neither the Complaint nor the proposed amended complaint alleges any facts connecting Barnes and Montcalm to Nevada. Instead, the Complaint includes general allegations concerning the role of Barnes and Montcalm in the fraudulent scheme. In their Response to the Motion to Dismiss, Third-Party Plaintiffs allege that Barnes and Montcalm reviewed the partnership agreements of Nevada investors and reviewed and approved

///
///
///
///

the K-1s that they authorized SLG to send to investors.[7] (*See id.* at 6–7.)

As the Ninth Circuit has made clear in its application of the effects test, an act with foreseeable effects in the forum is not sufficient; there must be "something more" — namely, "express aiming" at the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000); *see also Liberty Media Holdings, LLC v. Letyagin*, 925 F. Supp. 2d 1114, 1118 (D. Nev. 2013). The Complaint's general allegations regarding Barnes and Montcalm's involvement in the fraudulent scheme are therefore not adequate to establish jurisdiction. Even if it were foreseeable that harm would be caused in Nevada, Third-Party Plaintiffs still need to demonstrate that the alleged fraudulent acts of Barnes and Montcalm were expressly aimed at Nevada. *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010) ("Where defendant's 'express aim was local,' the fact that it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test.") (*quoting Schwarzenegger*, 374 F.3d at 807).

The ministerial acts described by Third-Party Plaintiffs regarding Barnes and Montcalm's contact with Nevada are likewise inadequate. Sending partnership agreements to Nevada investors, where there is no allegation that Barnes and Montcalm had solicited Nevada business, does not constitute purposeful direction. *See Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1248 (9th Cir. 1984) (finding that mere communication with defendant in the forum state does not satisfy minimum contacts). Likewise, the act of approving the K-1s and directing SLG to send them to all investors, does not satisfy purposeful direction.

///

///

---

[7] Third-Party Plaintiffs also make a passing reference to the Cash Calls references in Plaintiffs' Original Petition and state that they were invoiced by Montcalm and Barnes. (*See* dkt. no. 131 at 6.) As they do not explain the relevancy of this allegation to jurisdiction, the Court does not consider it here.

### 2. Arising Out of Forum-Related Activities

As Third-Party Plaintiffs have not established that Barnes and Montcalm purposefully directed their activities to Nevada, the Court need not consider whether the claims arise out of or relate to Montcalm and Barnes' forum-related activities. As with SLG, the Court notes that even if it were to find that the purposeful direction prong of the specific jurisdiction test has been met, the Court cannot find that the claims at issue in the case arise out of the forum-related activities.

First, Barnes and Montcalm's role in authorizing SLG to send the K-1s to investors would fail to satisfy prong two of the personal jurisdiction test for the same reasons that SLG's act of sending the K-1s would fail. Because SLG was only authorized to send K-1s to investors, it is impossible that the K-1s induced individuals to invest and, as discussed in Section IV.2., *supra*, remaining in the investment is not a claim in this case.

Second, no claim arises out of Barnes and Montcalm's involvement in the administrative process of approving the partnership agreements of Nevada investors.

The Court therefore finds that Third-Party Plaintiffs have not established jurisdiction over Barnes and Montcalm in Nevada.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendant Schain Leifer Guralnick's ("SLG") First Amended Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction (2:13-cv-78, dkt. no. 120) is granted.

It is further ordered that Third-Party Defendants Montcalm Co., LLC ("Montcalm") and Matthew Barnes' Amended Motion to Dismiss the Third-Party Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (dkt. no. 81) is granted.

All Third-Party Plaintiffs' claims against SLG, Montcalm, and Barnes are therefore dismissed.

DATED THIS 25th day of February 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE