UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MILLENIUM DRILLING CO., INC.,<br><br>                       Plaintiff,<br><br>       v.<br><br>BEVERLY HOUSE-MEYERS RECOVABLE TRUST, et al.,<br><br>                       Defendants. | Case No. 2:12-cv-00462-MMD-CWH<br><br>ORDER<br><br>(Third-Party Def.'s Motion to Dismiss – dkt. no. 202) |

**I.    SUMMARY**

Before the Court is Third-Party Defendant Carter Henson Jr.'s Motion to Dismiss ("Motion"). (Dkt. no. 202). The Court has also reviewed a response filed by Third-Party Plaintiffs Molly Hamrick, Beverly House-Meyers, and R & M Hamrick Family Trust (dkt. no. 215), and Henson's reply (dkt. no. 222). For the reasons discussed below, the Motion is granted.

**II.    BACKGROUND**

    **A.    Facts**

Plaintiff Millennium Drilling Co., Inc. ("Millennium") alleges that Defendants Beverly House-Meyers Revocable Trust; Grace Mae Properties, LLC; R & M Hamrick Family Trust; Robert H. Hamrick; Molly Hamrick; and Beverly House-Meyers acquired interests in several partnerships — Falcon Drilling Partners ("Falcon"), Colt Drilling Partners ("Colt"), and Lion Drilling Partners ("Lion") — engaged in oil and gas exploration. (*See* dkt. no. 30 at 2-15.) Millennium, in turn, entered into agreements with those partnerships to provide exploratory drilling and related services on certain sites, some of which were acquired through an agreement with Third-Party Defendant Patriot

Exploration Company, LLC ("Patriot"). (*Id.* ¶¶ 12, 31, 89, 128.) Alleging that Falcon, Colt, and Lion defaulted on their obligations under those agreements, Millennium now seeks compensation from Defendants for the work Millennium claims to have performed pursuant to the agreements. (*See id.* at 5-6, 9-10, 13, 15.)

Third-Party Plaintiffs separately allege that they were fraudulently induced into purchasing oil and gas investments by Third-Party Defendants Patriot, Henson, and Jonathan Feldman, among others. (*See* Notice of Removal, Exh. 1, *Hamrick v. Feldman*, No. 2:13-cv-0078-MMD-CWH (D. Nev. July 16, 2012) [hereinafter Dkt. no. 1-1, 2:13-cv-78].)[1] Third-Party Plaintiffs contend that Feldman and Henson created partnerships for oil and gas exploration (including Falcon, Colt, and Lion), which they fraudulently convinced investors to fund by misrepresenting expected returns and tax benefits. (*See id.* ¶¶ 4.01–4.18.)

Feldman, according to Third-Party Plaintiffs, is the President of Patriot and Millennium, and Henson was Patriot's Managing Director. (*Id.* ¶ 4.01.) Patriot is an Alaska corporation with an office in Houston, Texas. (*Id.* ¶ 2.07.) Henson also resides in Texas. (*Id.* ¶ 2.08.)

**B.    Procedural History**

On March 19, 2012, Millennium filed this lawsuit in the District of Nevada. (Dkt. no. 1.) Three months later, on June 6, 2012, Third-Party Plaintiffs filed a complaint against Third-Party Defendants — but not against Millennium — in Texas state court based on the same transactions giving rise to Millennium's lawsuit. (Dkt. no. 1-1, 2:13-cv-78.) Patriot removed the case to the Southern District of Texas. (Notice of Removal, 2:13-cv-78.) Third-Party Plaintiffs allege breach of fiduciary duty, fraud/fraud in the inducement, fraudulent nondisclosure, negligent misrepresentation, breach of contract, imposition of constructive trust, and conspiracy. (Dkt. no. 1-1, 2:13-cv-78.)

---

[1]The Court consolidated Third-Party Plaintiffs' separate lawsuit with case number 2:12-cv-00462-MMD-CWH ("2:12-cv-462"). After consolidation, the Court directed the parties to file all documents in case number 2:12-cv-462. In citing to any documents filed in Third-Party Plaintiffs' separate lawsuit, the Court will refer to "2:13-cv-78."

2

In January 2013, Hon. Melinda Harmon, United States District Judge for the Southern District of Texas, granted Patriot's Motion to Transfer Venue, determining that the Nevada and Texas actions involved substantially similar issues. (Transfer Order, 2:13-cv-78 (Jan. 15, 2013).) The transferred case was assigned case number 2:13-cv-00078-MMD-CWH ("2:13-cv-78"). This Court consolidated the two related cases into the first-filed Nevada action. (Dkt. no. 79). The plaintiffs and defendants in 2:13-cv-78 were designated as Third-Party Plaintiffs and Third-Party Defendants, respectively, in the instant case. (*Id.*)

On February 25, 2014, the Court granted a motion to dismiss filed by Third-Party Defendants Matthew Barnes; Montcalm Co., LLC; and Schain, Leifer, Guralnick ("SLG").[2] (Dkt. no. 172.) The Court found that it lacked personal jurisdiction over those parties. (*Id.*; *see* dkt. no. 168.) The day before oral argument on the motion, Third-Party Plaintiffs filed an amended complaint without requesting leave from the Court or obtaining the opposing parties' consent. (*See* dkt. no. 166.) The Court clarified in the dismissal order that the amended complaint was not properly before the Court, and that it failed to cure the jurisdictional problems with regard to Barnes, Montcalm, and SLG. (*See* dkt. no. 172 at 4.) Shortly after oral argument, Third-Party Plaintiffs sought leave to file a second amended complaint, which the Court denied in light of the late stage of the proceedings. (Dkt. nos. 171, 179.)

The Court now addresses Third-Party Defendant Henson's Motion to Dismiss for Lack of Personal Jurisdiction, filed February 5, 2015. (Dkt. no. 202.)

## III.   LEGAL STANDARD

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the defendant's motions are based

---

[2]The parties had previously stipulated to dismiss Third-Party Defendants Robert Holt and Elizabeth Holt from the lawsuit. (Dkt. nos. 169, 170.)

3

on written materials rather than an evidentiary hearing, "the plaintiff need only make a 'prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor. *Pebble Beach Co.*, 453 F.3d at 1154.

## IV.  DISCUSSION

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS § 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *Baker v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404-05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe v. Washington*, 326 U.S. 310 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction. Here, Third-Party Plaintiffs assert only specific jurisdiction with regard to Henson. (*See* dkt. no. 215 at 5-6.)

Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its

forum contacts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011). Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802). The party asserting jurisdiction bears the burden of satisfying the first two prongs. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Third-Party Plaintiffs seek to invoke this Court's jurisdiction over Henson based on actions he allegedly carried out while serving as the Managing Director of Patriot between 2005 and 2007.[3] (*See* dkt. no. 215 at 3-5.) In that role, Henson was responsible for "evaluating and providing technical advice on all aspects of the Company's investments and activities." (Dkt. no. 215-3 at 1.) Third-Party Plaintiffs claim that Henson and Feldman[4] created entities — including Falcon, Colt, Lion, Millennium, and Patriot — through which they defrauded Third-Party Plaintiffs. (Dkt. no. 1-1, 2:13-cv-78, at 9.) They further allege that Henson and Feldman conspired in, aided, and abetted each other's

---

[3] Henson claims that he was merely an employee of Patriot. Third-Party Plaintiffs, however, attached to their response a letter offering Henson the position of "Managing Director" of Patriot. (*See* dkt. no. 215-3 at 1.) During his deposition, moreover, Henson acknowledged that "Managing Director" was his only title while he worked for Patriot. (Dkt. no. 215-1 at 13.)

[4] Initially, Third-Party Plaintiffs claimed that Barnes was similarly involved in creating these entities and in using them to engage in fraud. (*See* dkt. no. 1-1, 2:13-cv-78.) The Court, however, dismissed Barnes from this lawsuit for lack of personal jurisdiction. (Dkt. no. 172.)

fraudulent conduct, both individually and as agents of Patriot and Millennium. (*See id.* ¶¶ 4.11-4.18.) Henson, for example, provided information about Patriot's drilling operations to Feldman, who relayed that information to outside investors — including Third-Party Plaintiffs — through quarterly reports. (Dkt. no. 215 at 3-5.) Taken together, Third-Party Plaintiffs argue, these actions constitute knowing and intentional tortious behaviors directed toward Nevada, which are sufficient to establish specific jurisdiction over Henson. The Court disagrees.

### A. Purposeful Availment and Purposeful Direction

"The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction." *CollegeSource, Inc.*, 653 F.3d at 1076. Cases involving tortious conduct are analyzed under the rubric of purposeful direction. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). Courts ask "whether a defendant 'purposefully directs his activities' at the forum state," and applies an "effects" test that looks to where the defendant's actions were felt, rather than where they occurred. *Yahoo! Inc. v. La Ligue Contre Le Racism Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803). In contract cases, a court examines "whether the defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (quoting *Shwarzenegger*, 374 F.3d at 802).

Here, because Third-Party Plaintiffs' claims sound in contract and tort, the Court will address both approaches to this prong of the specific jurisdiction analysis. *See Yahoo! Inc.*, 433 F.3d at 1206 (noting that the first prong "may be satisfied . . . by some combination" of purposeful availment and purposeful direction).

### 1. Purposeful Availment

Purposeful availment occurs when a defendant "'deliberately' has engaged in significant activities within a state, or has created 'continuing obligations' between himself and residents of the forum." *Burger King Corp.*, 471 U.S. at 475-76 (citations omitted). A single act associated with a forum state may be sufficient, "[s]o long as it

creates a 'substantial connection' with the forum." *Id.* at 475 n.18 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Activities constituting purposeful availment may include "executing or performing a contract" in a forum state, *Schwarzenegger*, 374 F.3d at 802, or delivering "'products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and [where] those products subsequently injure forum consumers." *Burger King Corp.*, 471 U.S. at 473 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). In assessing purposeful availment, courts have examined parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Third-Party Plaintiffs argue that Henson "purposefully avail[ed] [him]self of the privilege of conducting activities within" Nevada by conspiring to induce state residents to invest in oil and gas prospects. *Id.* at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); (*see* dkt. no. 215 at 6-7). They assert that Henson provided information about oil and gas prospects to Feldman, who, in turn, passed along the information to Nevada-based investors. (*See* dkt. no. 215 at 3-5, 7.) Henson, according to Third-Party Plaintiffs, knew both that investors would rely on the information he provided, and that certain investors were Nevada residents. (*Id.* at 7.) Third-Party Plaintiffs, however, have not made a prima facie showing that Henson knew or expected that Nevada-based investors would rely on this information.

In his deposition, Henson conceded that he provided periodic written updates on oil and gas prospects to Feldman, who was based in either New York or Connecticut. (*See* dkt. no. 215 at 4; dkt. no. 215-1 at 4-5, 7.) Upon reviewing certain reports Feldman had sent to outside investors, Henson acknowledged that Feldman's reports appeared to include language from Henson's updates. (*See* dkt. no. 215 at 4; dkt. no. 215-1 at 9-10; dkt. no. 215-2.) But Henson testified that he did not know whether Feldman had shared his updates with investors, or that any of those investors were located in Nevada. (Dkt. no. 215-1 at 7, 9-10, 30.) Nor did Henson communicate with outside investors. (*Id.* at

13.) Rather, according to Henson's testimony, Feldman controlled communications with investors, while Henson researched and assessed oil and gas prospects from his office in Houston. (*See id.* at 7-8, 11-14.)

Despite Third-Party Plaintiffs' assertions that Henson knew or should have known that he helped dupe Nevada residents into faulty investments, they have not offered evidence to dispute Henson's deposition testimony. (*See* dkt. no. 215 at 7.) Instead, Third-Party Plaintiffs concede that communications containing Henson's research "were presumably prepared by Feldman in New York." (*Id.* at 4.) Moreover, even assuming that Henson introduced information on oil and gas prospects into the stream of commerce by relaying his updates to Feldman, Third-Party Plaintiffs have not shown that Henson had any expectation that this information would be consumed by investors in Nevada. *See Burger King Corp.*, 471 U.S. at 473. Thus, to the extent Henson had any connection with Nevada-based investors, that contact is too attenuated to show purposeful availment. The Court accordingly finds that Third-Party Plaintiffs have not met their burden of showing that Henson purposefully availed himself of Nevada's laws and protections.

### 2. Purposeful Direction

Third-Party Plaintiffs' arguments are similarly deficient under the purposeful direction framework that applies to their tort-based claims. To assess purposeful direction, courts employ an "effects" test, which requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803). As the Ninth Circuit has made clear in applying the effects test, an act with foreseeable effects in the forum is not sufficient; there must be "something more" — namely, "express aiming" at the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000), *abrogated on other grounds by Yahoo! Inc.*, 433 F.3d at 1206-08; *see also Liberty Media Holdings, LLC v. Letyagin*, 925 F. Supp. 2d 1114, 1118 (D. Nev. 2013).

///

Third-Party Plaintiffs cannot make a prima facie showing of purposeful direction because they have not demonstrated that Henson expressly aimed any activity at Nevada. They claim that Henson "knowingly directed" intentional torts to Nevada by conspiring with Feldman to induce investments in oil and gas prospects. (Dkt. no. 215 at 9; *see* dkt. no.1-1, 2:13-cv-78, ¶¶ 4.01, 4.05, 4.11.) They further allege that Henson "reached out to harm Third-Party Plaintiffs Hamrick and House-Myers" (dkt. no. 215 at 9), but offer no evidence to dispute Henson's testimony that he never communicated with outside investors. (*See* dkt. no. 215-1 at 7-10, 13.) Third-Party Plaintiffs also point out that Henson was involved in contracts, invoices, and email communications for acquiring interests in and assessing oil and gas prospects. (Dkt. no. 215-3.) Those documents, however, do not suggest that Henson directed tortious activity toward Nevada; rather, they indicate his involvement in Patriot's work of analyzing and securing oil and gas prospects. (*See id.*)

Even after resolving all factual disputes in Third-Party Plaintiffs' favor, the Court finds that Third-Party Plaintiffs have failed to make a prima facie showing of purposeful direction. *See Pebble Beach Co.*, 453 F.3d at 1154. Because Third-Party Plaintiffs cannot satisfy the first prong of the personal jurisdiction analysis, the Court will grant Henson's Motion.

### B.    Relatedness and Fairness

The Court finds that Third-Party Plaintiffs have failed to demonstrate an element that is necessary to establish specific jurisdiction over Henson. Accordingly, the Court will not reach the remaining two prongs of the specific jurisdiction analysis — whether Third-Party Plaintiffs' action arises out of Henson's forum-related activities, and whether asserting personal jurisdiction over Henson is reasonable. *See CollegeSource, Inc.*, 653 F.3d at 1075.

### V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

1 | determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Third-Party Defendant Carter Henson, Jr.'s Motion to Dismiss for Lack of Personal Jurisdiction (dkt. no. 202) is granted.

All of Third-Party Plaintiffs' claims against Henson are therefore dismissed.

DATED THIS 17th day of September 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE